UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DIANE M. JEFFREY,

                         Plaintiff,          12-CV-0498(MAT)

          v.                                 **DECISION**
                                             **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                         Defendant.

_____

## INTRODUCTION

     Plaintiff Diane M. Jeffrey, a/k/a Diane M. Bielinski
("Plaintiff"), who is represented by counsel, brings this action
pursuant to the Social Security Act ("the Act"), seeking review of
the final decision of the Commissioner of Social Security ("the
Commissioner") denying her application for Disability Insurance
Benefits ("DIB"). This Court has jurisdiction over the matter
pursuant to 42 U.S.C. § 405(g).

     Presently before the Court are the parties' motions for
judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure. Dkt.##8, 10. Plaintiff alleges that the
decision of the Administrative Law Judge ("ALJ") who heard her case
is erroneous because it is not supported by substantial evidence
contained in the record, or is legally deficient and therefore she
is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#9) 18-25.
The Commissioner cross-moves for judgment on the pleadings on the
grounds that the ALJ's decision is correct, is supported by

_____

[1] Carolyn M. Colvin is automatically substituted for the
previously named Defendant Michael Astrue pursuant to
Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend
the caption accordingly.

substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#11) 16-25.

## BACKGROUND

Plaintiff protectively filed a DIB application under Title II of the Act on September 14, 2008 due to spinal disorders, carpal tunnel syndrome, post-concussion syndrome with visual disorders, right lower extremity neuropathy, right shoulder impairments, and reflex sympathetic dystrophic disorder/complex regional pain syndrome ("RSD/CRPS") caused by injuries sustained in a motor vehicle accident. T. 154. Her DIB claim was denied on May 4, 2009, and she subsequently requested a hearing before an ALJ. T. 68-69. A video hearing was held before ALJ Scott Staller on December 20, 2010. T. 27-49.

In his written decision, the ALJ applied the five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA. See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

ALJ Staller found at step one that Plaintiff did not engage in substantial gainful activity after March 17, 2008. T. 15. At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; chronic neck and back pain; vertigo; headaches; carpal tunnel syndrome ("CTS"); and RSD/CRPS. T. 15-16. Next, the ALJ found that Plaintiff's impairments did not meet or equal the Listings set forth at 20 C.F.R. Part 404, Subpart P, Appx. 1.

T. 16-17. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to perform work at the sedentary level of exertion and could frequently reach, handle, and finger. T. 17-20.   At step four, The ALJ obtained the testimony of a Vocational Expert ("VE"),and found that Plaintiff could perform her past relevant work as a telemarketer and employment market researcher. T. 20-21.  He then concluded that Plaintiff was not disabled. T. 21.

Following the ALJ's unfavorable determination, Plaintiff requested review by the Appeals Council on February 4, 2011. T. 7-9. Over one year later, on March 30, 2012, the Appeals Council denied review, making the ALJ's determination the final decision of the Commissioner. T. 1-4.  Plaintiff then commenced the instant action. Dkt.#1.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## DISCUSSION

### I.  General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section

directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642

(2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. **Relevant Medical Evidence**

### A. **Treating Sources**

#### 1. **Diagnostic Imaging Tests**

Plaintiff went to the Mercy Hospital Emergency Room on March 11, 2008, following a car accident. T. 206. There, a CT scan revealed normal results, and x-rays of her lumbar spine showed mild lumbar spondylosis with no evidence of fracture or spondylolisthesis. T. 206-07. Cervical spine x-rays revealed mild cervical spondylosis. T. 207-08.

MRI studies of Plaintiff's brain and cervical spine taken on March 18, 2008, revealed no intracranial hemorrhage or mass effect, normal cervical alignment, and a small disc protrusion at C5-6, which the attending physician characterized as an "unremarkable spinal cord." T. 203, 387. Plaintiff was diagnosed with post-concussion syndrome, and was directed to stay off work until March 22, 2008, and to use Tylenol and Motrin. T. 388.

A lumbar spine MRI dated November 24, 2008 showed moderate L4-5 central spinal stenosis; mild right L4-5 recess stenosis secondary to concentric bulging disc; ligamentous hypertrophy; facet arthropathy; disc dessication; concentric bulging of the

disc; annular tears involving the left L5-S1, L3-L4, L2-3, and L1-2 levels; and no evidence of disc herniation. T. 316.

On December 4, 2008, a right shoulder MRI showed rotator cuff tendinopathy, peritendinitis and subacromial bursitis, without evidence of rotator cuff tendon tear; and moderate arthropathic changes involving the AC joint, with associated lateral downsloping type 2 acromion with spur formation anteroinferiorly producing rotator cuff impingement. T. 317.

On July 7, 2009, Plaintiff had a cervical spine MRI. T. 445-46. The impression was unchanged from the prior study that was normal with the exception of C5-6 degenerative change with canal and foraminal stenosis. T. 446.

An EMG study conducted on July 24, 2009, revealed findings consistent with mild right C5-6 radiculopathy, bilateral carpal tunnel syndrome moderate on the right, and mild right lower extremity sensory neuropathy, with no evidence of peripheral neuropathy. T. 441.

## 2.    Gosy and Associates Pain Treatment

On April 7, 2008, a physical examination of Plaintiff yielded unremarkable clinical findings. T. 286. Straight leg raise tests were negative. Plaintiff had full strength throughout with no atrophy. Medications were continued. T. 286. Findings remained unchanged through October, 2008, and medications were continued. T. 288-89. Her diagnosis in October was CRPS, right lower extremity. T. 292.

In April, 2009, Plaintiff mentioned difficulty with prolonged activities. T. 402. Clinical findings were unchanged, and diagnosis was RSD of the lower limb and medications were continued. T. 403.

Clinical findings in January and April, 2010, were unremarkable and her assessment and treatment remained unchanged.

### 3.   John Leddy, M.D.

Plaintiff was periodically examined by Dr. John Leddy starting in March, 2008. Sometime in 2008, Dr. Leddy wrote a letter to the New York State Office of Temporary and Disability Assistance stating that Plaintiff's injuries significantly limited her physical and cognitive abilities. T. 422. She had post-traumatic visual disturbance, poor balance, and post-concussion syndrome. Her neurologic exam was described as consistently abnormal, and she had back and neck pain that limited her abilities to do sustained activities. He wrote that a March, 2008 MRI showed a herniated disc at C5-6. Id.

In December, 2008, Dr. Leddy found Plaintiff's cervical motion was "not bad," Romberg sign was mildly positive, and right shoulder had positive impingement sign. All other examinations were normal. Diagnoses were post-concussion syndrome, cervicogenic disc pain due to C5-6 disc protrusion, possible right shoulder rotator cuff tear, and lumbar sprain. He opined that she could not work and planned further testing. T. 359.

Plaintiff returned to Dr. Leddy on February 18, 2009, upon complaints of neck and low back pain with numbness and tingling in her hands and feet. T. 354. She exhibited normal strength,

sensation, and reflexes in her upper extremities with some pain upon cervical spine flexion and rotation test. Plaintiff was prescribed a transcutaneous electrical nerve stimulation ("TENS") unit and Lyrica for pain. Id.

One month later, Dr. Leddy found reduced cervical and lumbar motion, but no neurologic defects. Tandem gate and Romberg sign were abnormal, and Plaintiff complained of dizziness. Straight leg raise was negative. Dr. Leddy opined that Plaintiff could not work, and medication and TENS unit were continued. T. 353.

### 4.   James Lawrence, M.D.

Dr. James Lawrence, an orthopedic surgeon, evaluated Plaintiff on July 20, 2009. T. 437-38. The examination found lumbar flexion and extension limited by 25%. Plaintiff could squat, and heel and toe walk. Straight leg raise test was negative, and the hips retained full ranges of motion. Spring's test and Tinel's sign was positive at the right posterior tibial nerve. Distraction test was positive at the sacroiliac joint on the right. Patrick's test was negative. T. 437. Cervical spine ranges of motion were limited by 25% in all planes. T. 438. There was no atrophy detected, Spurling's test was negative, chin tuck maneuver was positive, and Tinel's sign was positive on the right of the median nerve. Plaintiff had full muscle strength throughout with symmetrical sensation and reflexes. Id. Her pain was moderately improved after Dr. Lawrence administered an injection. Id. Dr. Lawrence's impression was chronic cervical myofascial pain with left carpal tunnel, mechanical lumbosacral spine pain with right tarsal tunnel,

wrist and right hand numbness, and probable post-concussion syndrome. He prescribed Plaintiff an oral steroid for inflammation, and recommended wrist splints for CTS. T. 438-441.

### 5.   Physical Therapy and Chiropractic Treatment

In March and April, 2008, Plaintiff reported to her chiropractor that she had constant neck and back pain, described as moderate or 4/10. T. 217. Cervical flexion and right lateral rotation were normal, left lateral rotation and bilateral flexion were decreased, and left foramina compression test was positive.

Plaintiff attended physical therapy sessions from April to September, 2008. T. 220-75. She initially described her pain as 8/10, reduced to 7/10 at the end of the treatment period. T. 275, 220. Cervical extension and left rotation were 75% of normal, with all other cervical ranges of motions full. Neurological testing was normal. T. 275. Plaintiff showed minimal improvement overall.

A September, 2008 chiropractic report stated that Plaintiff's left foramina compression test was positive and cervical spine ranges of motion were 74% of normal. Lumbar ranges of motion were normal. Tests indicated "severe disability for her neck and low back complaints," and twice-weekly treatments were recommended. T. 308.

### 6.   Dr. Mark Gordon and Dr. Andrew Siedlecki

Dr. Mark Gordon, a neuro-optometrist, evaluated Plaintiff on April 28, 2008, and diagnosed her with post-trauma vision syndrome. T. 362. She was provided prism lenses to work with and received a syntonic home phototherapy unit. T. 363. In late July, Plaintiff

complained of increased light sensitivity, dizzy episodes, and blurry vision that went away on its own. She stated that Lortab managed her headaches. T. 363-64. Testing showed continued problems with convergence for near vision. T. 365. Dr. Gordon described Plaintiff as "temporarily disabled." T. 365.

In January, 2009, Plaintiff was examined by ophthalmologist Dr. Andrew Siedlecki, who found that Plaintiff's vision was 20/20 (right) and 20/40 (left), with normal ocular movements and healthy optic nerves and evidence of early macular degeneration. T. 319-20. He stated that Dr. Gordon had found microphoria that accounted for eyestrain and visual fatigue. T. 320. Plaintiff was advised to use artificial tears and vitamins. T. 320.

**B.   Consultative Examinations**

**1.   Frank Luzi, M.D.**

Dr. Luzi reviewed Plaintiff's records and evaluated her on October 15, 2008 at the request of her insurer. T. 367-71. Dr. Luzi provided that he would not assess limitations from Plaintiff's post-concussion syndrome, that Plaintiff required no further orthopedic treatment for her neck and back and her pain could be managed by medications, and that her pain exhibited during the musculoskeletal examination was a result of symptom magnification. T. 370.

Dr. Luzi's diagnoses were cervical and lumbar sprain/strain, claimed post-concussion syndrome from the March 2008 accident, and age-related multilevel degenerative disc disease in her cervical spine and likely in her lumbar spine. T. 369. He opined that

Plaintiff did not require further treatment and had recovered from her injuries. The examination showed no objective findings, and Plaintiff was not disabled and had no work restrictions. T. 369-70.

### 2.   **Cindrea Bender**, M.D.

Plaintiff underwent another consultative examination on April 15, 2009. She reported to Dr. Cindrea Bender that she lived with her boyfriend, cooked 3-4 times per week, shopped weekly, and did laundry twice weekly. T. 399. She did not do housecleaning, but was able to care for her personal needs. Id.

Dr. Bender observed mild difficulties in Plaintiff's ability to get on and off the exam table, and that Plaintiff had abnormal gait (slow), a limp, and was unable to walk on heels and toes or squat. T. 399. Most examination findings were unremarkable, with the exception point pain and spasm detected. She diagnosed Plaintiff with neck pain by history, back pain by history, headache associated with neck pain per history, and recurrent dizziness, with a stable prognosis. T. 401. Due to neck pain, Plaintiff was moderately limited in her abilities to lift/carry/push/pull large items. Due to low back pain, she was moderately limited in her abilities to walk and stand for prolonged periods, and climb and excessive number of stairs. Finally, Dr. Bender assessed that Plaintiff had no limitations in her abilities to reach, handle, finger, hear, or speak. Id.

## III. **Non-Medical Evidence**

At the time of her hearing, Plaintiff was 60 years-old, had obtained a bachelor's degree, and previously worked as a

telemarketer, sales representative, and an interviewer until her car accident in March, 2008. T. 32-33.

Plaintiff testified that she had constant pain in her neck and back, pain and numbness in her right arm and hand, and that her right had would constantly fall asleep. T. 33-35. Plaintiff also suffered from headaches three to four times per week, and that she treated them with ice packs and by reclining. She told the ALJ that she could sit for a half-hour, and that she spent most of the day reclining with ice packs on her neck and back. T. 34-35. Plaintiff reported that she experienced dizziness that caused her to stumble. T. 35.

With regard to her daily activities, Plaintiff stated that she could shower, get dressed, and do "a little" housework such as making the bed and dusting, but needed help getting into the bathtub, and could not grocery shop or vacuum. T. 35-36. During the hearing, Plaintiff was sitting "hunched over" with an ice pack, and had to take a break from testifying in order to take pain medication.  T. 36-37, 41.

The ALJ also heard testimony from VE Bassey Duke, who opined that Plaintiff's past work was equivalent to the listings in the Dictionary of Occupational titles for the following occupations: telemarketer, employment market researcher, and sales representative. T. 45. The ALJ posed to the VE a hypothetical involving an individual with Plaintiff's age and educational background who could perform work at the light exertional level. The VE responded that such an individual could perform Plaintiff's

past sedentary work. T. 45-46. If restricted to only occasional reaching/handling/fingering, the same individual could not perform any jobs. Likewise, if the same individual missed two or more days of work per month at the light or sedentary level, then there would be no jobs in the national economy that the individual could perform. T. 47.

IV. **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

A.    **RFC Finding**

Plaintiff first contends that the ALJ improperly substituted his own medical opinion in finding that Plaintiff possessed the ability to reach, handle, and finger on a frequent basis. Pl. Mem. 20-21.

It is well-settled that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983); see also Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998) (citing McBrayer, supra).

Here, the ALJ found that "[Plaintiff's] 2009 diagnosis of early onset CTS in her left hand and moderate CTS in her right hand is sufficiently accommodated for in the above [RFC] by a frequent limitation for reaching, handling, or fingering with the bilateral upper extremities." T. 19. The evidence the ALJ points to in support of his conclusion is an EMG nerve conduction of Plaintiff's hands from July 24, 2009, and recommendation by Dr. Lawrence of a splint for Plaintiff's right wrist. T. 439-41. While several of

Plaintiff's treating physicians stated how her impairments affected her ability to perform work-related activities, none of these opinions related to her diagnosis of CTS or her ability to use her hands. T. 354, 357, 359, 365, 381-83, 422.

Other treatment notes are consistent with a mild restriction. For example, on August 26, 2009, Plaintiff saw Dr. Gosy, who noted Plaintiff was "wearing a right carpal tunnel brace but Tinel sign [tingling] is negative bilaterally today." T. 444.

Finally, Dr. Bender, the consultative examiner, noted that Plaintiff's upper and lower extremities retained full ranges of motion with intact hand and finger dexterity and full grip strength. T. 400-01. She further found that Plaintiff had no limitations in the abilities to reach, handle, or finger. Id. As such, the ALJ's frequent restriction in his RFC determination was greater than the limitations assigned by the consultative examiner.

For these reasons the ALJ's RFC finding is supported by substantial evidence.

**B.    Treating Source Evidence**

Plaintiff next avers that the ALJ failed to assign properly weight to the opinion evidence submitted by Plaintiff's treating sources: her optometrist, Dr. Gordon, and her physician, Dr. Leddy. Pl. Mem. 20-23.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case

record." 20 C .F.R. § 404.1527(c)(2); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d Cir. 1999); <u>Schisler v. Sullivan</u>, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. <u>Saxon v. Astrue</u>, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. <u>Otts v. Comm'r</u>, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." <u>Martin v. Astrue</u>, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

### 1.   Dr. Leddy

The ALJ afforded Dr. Leddy's opinion "limited weight," and sufficiently explained his reasons for doing so. First, he noted that, although Dr. Leddy opined that Plaintiff was significantly limited in certain abilities due to her injuries, there was little objective evidence showing that her injuries were severe enough to warrant disability. T. 20. Specifically, imaging studies of Plaintiff's neck, lower back, and head, showed only mild to moderate impairments. <u>Id.</u> Despite Plaintiff's impairments, her activities of daily living, such as driving, bathing, dressing, and

cooking, were inconsistent with Leddy's opinion of complete disability. Id. Independent examiner Dr. Luzi reviewed and evaluated Plaintiff's condition on October 27, 2008, and opined that Plaintiff had recovered from her cervical and lumbar strain/sprain caused by the motor vehicle accident earlier that year. T. 18. Likewise, Dr. Leddy, in December, 2008, found that Plaintiff had some spinal stenosis at L4-5 but no focal protrusions impacting a nerve root. These findings were consistent with a November, 2008 MRI that showed moderate L4-5 spinal stenosis. Id.

To the extent Plaintiff seeks to argue that the ALJ did not address Leddy's opinion that Plaintiff was "disabled and should qualify for Social Security disability" (Pl. Mem. 23), such a determination is reserved to the Commissioner and will not be given any special significance. 20 C.F.R. § 404.1527(d); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); see also Rodriguez v. Astrue, 12-CV-142S, 2013 WL 690502, at *3 (W.D.N.Y. Feb.25, 2013) ("Whether an individual is 'disabled' under the Act is not a medical issue but is an administrative finding.").

Accordingly, the ALJ properly afforded Dr. Leddy's medical opinion limited weight, and stated the requisite good reasons for doing so.

### 2.  Dr. Gordon, Optometrist

The Court also rejects Plaintiff's assertion that the ALJ did not consider the opinion of Dr. Gordon that Plaintiff was disabled by her visual conditions related to post-concussion syndrome. Pl. Mem. 22.

On the outset, the Court notes that Dr. Gordon completed form DDD-3883 and reported that "he cannot provide a medical opinion regarding this individual's ability to do work-related activities." T. 325. Thus, Plaintiff appears to challenge the ALJ's failure to consider Gordon's opinion that Plaintiff "remains totally temporarily disabled as a result of the injury sustained in the accident . . . ." T. 365. As stated earlier, such a determination is reserved to the Commissioner and is given no special significance. 20 C.F.R. § 404.1527(d).

In any event, the ALJ cited to the treatment notes of Plaintiff's treating ophthalmologist, Dr. Siedlecki, who noted, among other things, that "2 independent medical examiners say she is fine," that Plaintiff's MRI and CT images taken after the accident were unremarkable, and that his own evaluation showed early dry macular degeneration, requiring only artificial tears and vitamin supplements as treatment. T. 19.

Here, the ALJ applied the appropriate legal standards when he considered the full record and properly evaluated Plaintiff's treating source opinions. In this regard, his decision was based upon substantial evidence.

## C.   Step Four Finding

Plaintiff contends that the ALJ failed to obtain any information about accommodation provided to Plaintiff in the course of her performance in her previous positions, rendering his step four finding erroneous. Pl. Mem. 24.

The "accommodations" Plaintiff refers to pre-date her motor vehicle accident in March, 2008--the incident alleged to have caused her disabling impairments. T. 283. Contrary to Plaintiff's contention, the evidence from the consultative psychiatric evaluation indicating that Plaintiff's "longest employment was she owning [sic] market research business with her mother" (Pl. Mem. 24), does not amount to an accommodation per se, it does not relate to or reference Plaintiff's physical limitations, and it too pre-dates her accident injuries. T. 393. Plaintiff's argument that the ALJ should have considered Plaintiff's previous work accommodations is tenuous, at best, and must be rejected.

Where, as here, substantial evidence supports the assumptions upon which a VE bases his opinion, the opinion shows Plaintiff can perform work suited to her physical and vocational capabilities. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). The ALJ's step four determination is therefore supported by substantial evidence.

### D.   Plaintiff's Credibility

Plaintiff argues that the ALJ failed to make a proper credibility determination. Pl. Reply Mem. 4-8

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a

medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

In finding Plaintiff's subjective complaints of pain to be not fully credible, the ALJ noted that the clinical findings and diagnostic tests did not support Plaintiff's allegations as to the extent and severity of her symptoms. T. 17-20. Abnormal clinical and diagnostic findings were generally minimal with some range of motion limitations to the cervical and lumbar spine, and some vision difficulties were present, yet Plaintiff remained able to drive, do chores, read, and watch television. The ALJ specifically

mentioned that Plaintiff's treating physician observed that "she is able to complete her own activities of daily living and does drive" as of November, 2010. T. 16.

Plaintiff's reports to her treating physicians and chiropractor that she had minimal-to-moderate back pain, and that several of plaintiff's physical evaluations showed normal, symmetric, or full strength, are inconsistent with her complaints of debilitating pain. T. 17-18; 203-04, 286, 354, 369, 379, 385, 400, 438, 454, 457, 470, 481, 485. Two treating sources and two consultative examiners found no evidence of atrophy, despite Plaintiff's claim that she spent most of the day in a recliner with ice packs. T. 286, 369, 401, 438, 448, 454, 457, 460, 485. Finally, consultative examiner Dr. Luzi reported that Plaintiff's examination yielded no objective findings and found Plaintiff's complaints due to "symptom magnification and malingering." T. 369-70.

Given that it is the responsibility of the Commissioner, not the reviewing Court, to assess a Plaintiff's credibility, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record. See Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994) (reviewing court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.")

Accordingly, the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#8) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt.#10) is granted. The Complaint is dismissed in its entirety with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           September 30, 2014